Good morning. May it please the Court, Kristin Erickson appearing on behalf of Appellant Scott Tran in this matter. Counsel's function in the adversarial process is to ensure a criminal defendant's right to a fair trial. That's the function and the reason that competent counsel is required. In fact, the integrity of the criminal justice system depends upon that. And that's why when competent counsel represents a defendant, one can justify reliance on the outcome. In this case, Mr. Tran was denied his right to the effective assistance of counsel, and in fact, there was a reasonable probability of a different result had he not been denied effective assistance. MS. LAMARQUE Isn't the real issue here the prejudice prong? MS. ERICKSON It is, Your Honor, absolutely. The court, the district court, actually found three instances of incompetence, but found that that did not rise to the level of, did not create error in this case. I disagree that counsel's objection to the interrogation itself and to request that portions of it be stricken did not amount to ineffective assistance. I think that that was an unreasonable conclusion. I obviously agree that the failure to request an admonishment was incompetence as well. But the reason in this case there was prejudice is that the court, the Attorney General, all assume that this is an overwhelming case of guilt. And that assumption is absolutely wrong. In this case, the theory is derivative liability. Obviously, Scott Tran didn't kill anybody. His whole theory of liability is that he was present at the scene and that he aided and abetted the killer in some act, which was not the homicide, and that the natural and probable consequences of his aiding and abetting led to the murder. Was it ever shown through related proceedings who the actual, who caused the actual fatal blows or who shot the gun? It was, Your Honor. And he's actually, was subsequently indicted and convicted as well. Well, we know your client was there and that he, at least under the evidence most favorable to the State, that he hit him, hit the victim or something of that nature. The evidence that's most favorable to the State, however, is not as strong as they are. So if we take a snippet of, for instance, a 6-hour interview of the defendant, wherein 5 hours and 58 minutes of that interview he denies involvement and says he wasn't there, those statements in which he says that he did get out and may have kicked the individual, in other words, what he tells the officers is, at one point, if I had got out, I would have kicked them. But he denied that he did kick them. We know he was there, though, right? That's not a question. Absolutely. But mere presence at the scene does not amount to aiding and abetting. But, I mean, if he was denying that he was even there, that obviously was a lie from the start, right? Right. But that is not the crux of his statement. His statement was that he did go. He was in the car. And for the most part, he indicated he had been drinking heavily, was drunk. He was aware that there was a melee going on, a fight, that as he stepped out of the car, that's when he heard the gunshot go off and he got back into the car. If that's true, then that is mere presence at the scene, and that would not even amount to aiding and abetting. But even if he had gotten out of the car and hit the victim, that is not necessarily overwhelming evidence of guilt, because the prosecution still had to prove that second prong, and that is that aiding in that assault, and it's undisputed that he did not know that there was a gun there. There was absolutely no evidence that he was aware there was a gun there, and in fact, Fong, the accomplice that testified, said nobody else knew there was a gun there, and that everybody was quite surprised by the fact that this went off. So we know that he wasn't aiding and abetting in a crime in which he knew that there was a firearm involved, that there was a deadly weapon involved, or where he was going knowing there was going to be a killing. Is that an essential requirement? Absolutely. It is. He had to know that there was a firearm? No, but he had to be aiding and abetting in any crime, and the only way they could establish he was aiding and abetting in any crime is if he had actually gotten out and assaulted the victim. So assuming that portion is true, if he's aiding and abetting a simple assault or an assault likely to commit great bodily injury, the prosecution still had to assault with force likely, would be a homicide. And that standard is set forth in the California jury instructions, which indicate that would a person of reasonable and ordinary prudence expect that a homicide is likely to occur by participating in a fight, a natural consequence is one which is in the normal range of outcomes and that may be reasonably expected to occur if nothing unusual has intervened. And probable means likely to happen. So if, in fact, he aided and abetted in a simple assault or an assault without a weapon, the jury still had to find that it was more probable than not, or a very likely outcome, a probable outcome, that a homicide involving a firearm would occur. The reason that that's problematic is for two reasons. The statements that came in from the officer during the six-hour interrogation, and I say officer, I mean officers, because there's multiple police officers that are interrogating the defendant throughout the two interviews. Throughout those interrogations, the police officers repeatedly make statements to the effect that this would be a natural and probable consequence. They essentially testify, although they're not testifying to that. The other problem is the gang expert that testified actually testified to that conclusion, that legal conclusion, that murder is a natural and probable consequence of a gang fight. And he says, I know this because I've spoken to gang members and gang members know that that's a natural and probable consequence. That was not a proper opinion for this expert to render, because essentially what the expert was saying is, in my opinion, this defendant knew that a homicide was about to occur. How do we analyze, I mean it sounds, there are a lot of problems at the trial level, but we have to analyze this under EDPA. So how can we say that the state court was unreasonable and wrong at this point in the proceedings? Well, I think it was absolutely an unreasonable application of Strictly v. Washington in this case, because I think that the court jumped to the conclusion that this was an overwhelming case, an overwhelming evidence case, and that's not true. And when you pick that apart and you look at it in its cumulative sense, in other words, we have multiple errors here. We have errors with the interrogation. Let's imagine for a moment that the prosecution said to the judge, Your Honor, I'm going to call detectives, and I'm going to have those detectives testify to the following. Scott Tran is a liar. Scott Tran is a manipulator. Scott Tran didn't tell me the truth. Bee told me the truth. Fawn told me the truth. I spoke to nine witnesses, and they were all truthful, and Scott Tran is a liar. Scott Tran is a gang member. None of that evidence, I mean, the prosecutor would be laughed out of court if he were to ask the court to call a witness to testify to those things. But that's absolutely what the jury heard for six hours. Not only did they hear it for six hours, they read it, and they asked for those transcripts during deliberations and read those during deliberations. So you have all of this outside evidence that should never have been brought in, and there was never an admonition for the jury to disregard it. And we know that it's coming from an official source, a government source, which should be more reliable, is presumed to be more reliable. And so the jury is basically bombarded with police officers' opinions that the defendant is guilty, that the defendant is a liar, that the defendant participated. One of the detectives testified that they often tell lies to the suspects in order to get them to talk, right? I mean, the jury heard that, right? Correct. Correct. And the Attorney General points that out to say that that cures all the problems with the interrogation. But the problem is we know that much of what those police officers told him were not lies. We know that they talked to third parties. We know they talked to Bea, and we know they talked to Fawn. And those police officers relayed to Scott Tran numerous times exactly what Bea said he did and exactly what Fawn said he did. Then the government called those two witnesses as their key witnesses in trial. So what happens is you have these two, one accomplice who's getting 11 years, who is the person that handed the gun to the shooter. So there's ample opportunity to cross-examine them as to what they told the police, right? Well, Fawn is cross-examined, but the police officer's statement that Fawn is telling the truth, which is essentially vouching for what this witness is saying, couldn't be properly cross-examined. And defense counsel should have had that stricken and sanitized from the record anyway, and that's where the incompetence comes in. Because let's say defense counsel asked him, did you lie to Scott Tran when you told him Fawn told you that he participated in the fight? The answer would be no, I didn't. I didn't lie to him because that's the truth. That is what Fawn told him. But that wasn't admissible evidence. And that evidence was especially harmful because it is vouching for the veracity of the government's witnesses. So these two witnesses that come in that offer not overwhelming evidence, they don't offer overwhelming evidence of guilt, but B was not present. B was testifying after being granted probation for having a gun for which they accused him of having used that gun during the shooting. He then ended up getting a deal. He wasn't present at the scene, so he basically testified to statements that Scott Tran supposedly or allegedly made. But then those statements are bolstered by the officer's statements during the interrogation, which were not subject to proper cross-examination, wherein the officers say on at least five occasions, why would B lie to us? B is your friend. He's telling us the truth and you're lying to us. So you have this situation where the entire trial is based upon what the officer's theory of the case is, what the officer's belief in the case is, and not what the actual evidence is. In other words, the jury wasn't able to hear the evidence in its unadulterated form because there is no unadulterated form in this case because the entire body of evidence was infected by the officer's interrogation that was admitted into evidence. All right. Counsel, you're exceeding your time. I apologize. Thank you. Thank you very much. May it please the Court. Megan Beal, Deputy Attorney General, on behalf of Appellee Warden. Your Honors, that was a very interesting argument, but sitting there, I felt like I was listening to a closing argument in a trial. The issue in this case under ADIPA is there's three prongs to ineffective assistance of counsel. Was counsel deficient? Did that cause prejudice? And was the state court's judgment objectively unreasonable? Now, in this case, the district court identified three elements of deficient performance, and I really have to strongly object to the district court's finding that counsel was deficient in the admission of the gang evidence because counsel objected to admission of the gang evidence. Counsel did object to that. His performance was not deficient. It was the court ruling that the evidence was going to come in. And so there was no deficiency of counsel in terms of admission of the gang evidence. What did the California court say about that evidence? The California court, it was discussed more directly, because that was a direct appeal under admission of evidence rather than ineffective assistance. Totally admissible. Completely admissible on the issues of motive and identity. And that is also reflected in the Ninth Circuit's ruling in Wyndham v. Merkle, where the Ninth Circuit, this Court has upheld a similar admission of evidence in a case where, in that case, Wyndham wasn't even a gang member. It was his associate, Woods, who was the gang member. The gang evidence came in, again, to show that Wyndham assisting Woods in a gang-related crime, gang retaliation, as here, that the evidence was still admissible, even against Wyndham, to show that he was participating in this retaliatory act by a gang. So if we look at the other two areas, voluntary intoxication and the interrogation, in terms of the interrogation by the police officers, Your Honors, one has to look at, if I could direct the Court's attention to pages 12 and 13 of the supplemental excerpts of record, in which the State court repeated a large part of the closing argument of defense counsel. That was defense counsel's argument in this case, that the police were beating down Tran. In his interrogations, Tran gave very different statements. He gave statements, I did it. I didn't do it. I only said I did it because you told me I said I did it. He gave a lot of contradictory statements. And that was the basis of defense counsel's defense in this case, because there is no defense for Tran. There was no other defense he had. Let me ask you something. Would that videotape have come in after Crawford? Your Honor, again, it could have been objected to. In this case, counsel made a tactical decision to admit it, because that was the argument that he was bringing in this case. Under Crawford, in any event, the statements of Tran, the admissions of Tran, Tran's statements that he, inculpatory statements, that he was there and he kicked the tape, would always come in under Crawford, after Crawford. But the other police officer's testimony wouldn't have come in. I mean, the depiction of the police officers questioning him would not be admissible under Crawford. Ordinarily, the police officer statements would not have been admissible, and Tran's exculpatory statements during the tape would not ordinarily be admissible pre- or post-Crawford. They only came in because the counsel made a tactical decision to permit them in, because that was his defense, because, again, pre- and post-Crawford, Tran's inculpatory statements always come in. Well, I know. It's his admissions, but not the statements of the police officers. But you're right. But they would not have come in. Crawford doesn't really apply, and they would not have come in ordinarily pre-Crawford. But when you say that he made a tactical decision to allow the videotapes, what was the benefit of that? Your Honor, it's hard for me as a prosecutor to explain the benefit, because there truly was no defense in this case. However, and that's why, you know, I'd ask the Court when the Court has time to go back and review. Those pages do repeat a lot of the defense counsel's argument, and he sums up by, you know, he's saying it's not reliable, basically saying Tran's statements weren't reliable. I think the reliability of answers you get from this type of questioning is very questionable. I'm not testifying. Well, then he refers to there was a famous case in San Diego where the police officers charged a brother with killing his sister, and that turned out to be not correct. It was a transient who came in and killed him. But the brother and his friends were brought up for murder charges for a long time. He makes reference to that. So you're saying that he put in some exculpatory statements in there? Because the videotapes included exculpatory statements, too. The videotape also included exculpatory statements for Tran said, I only told you know, what am I supposed to say when you're telling me everyone says I did that? I only told you if you say I licked him, then I guess I licked him. I only told you that I was there and that I hit him because you're telling me that I did. But in this case, and again, under California law, what you have is you have, you know, Mr. Insovong originally gets his car kicked. And let's take out all the gang evidence. Let's take out all the gang evidence and all the police officer statement. Mr. Insovong gets his car kicked. Mr. Insovong does not stop and get out and punch the person who kicked his car. Wish that he had, but he hadn't. Instead, he goes back to find his homies. He goes back to find his friends. You get four cars of young men coming to this scene. You get all these people coming out of the car. We're kind of getting away from the ineffective assistance of counsel aspect of it. What, the question we were, we were searching for is what would be the tactical reason for the defense attorney not to object to the video and instead allow it? And I guess as Judge Seiler says, that the tactic, the reason would be because there was exculpatory evidence in the video that it was showing that he was being kind of badgered. So wouldn't it be the important thing for us to look at is to see whether that's a reasonable, tactical decision under ADEPA? Well, again, first the question is whether the state court's determination that that was a reasonable tactical decision. I know. That's what I say under ADEPA. It's technically unreasonable. And then in terms of that, I think, you know, I think what the defense counsel was going for was sympathy. Here you have a 17-year-old boy. He was not the shooter. He participated, but he was not the shooter. And I think that defense counsel is simply trying to get sympathy from the jury, as they're doing here. Because, again, you have all these young men going and doing an attack, an armed attack on an unarmed young man, whether he knew there was a gun or not. And he did not know there was a gun at the time. What was there in the video that would help in that tactic? It was just the badgering of the officers, the fact that the officers were lying, the officers were accusing him of being there, the officers were telling him that he wasn't drunk, the officers were telling him that, you know, that he of course he kicked him because two people – well, we have two witnesses telling the jury that you were hitting the person, and then you're going to come and say you're not. Who's the jury going to believe? These two witnesses or you? Which was a lie that the officers said. I guess the officers, instead of a video, the officers could have testified that France actually admitted that he was there and kicked people. But is it the fact that the defense attorney wanted to have more than that in it? I think that's correct, Your Honor. And, again, it's hard for me to understand the defense, but I think it was simply a defense to try to get sympathy from the jury. Well, I think you've got to if you're going to substantiate the fact that it was a rational, tactical decision. Well, Your Honor, I have to come from the point that I cannot see any defense in this case. There is no defense. Tran intentionally went and assaulted the victim. People were hitting this victim with a screwdriver, a chain, a bat. The fact that a murder occurred, it doesn't matter if there was a firearm or not. The fact that the victim was killed, this victim who had no – who was not armed and was lying there defenseless and not fighting back, being attacked by ten or twelve people, and whether a murder is a natural consequence. But that doesn't help to say that there's no defense. The defense attorney is obligated to make the best defense possible. So what we're really interested in is whether his strategic or tactical decision was reasonable. And the best defense possible in this case was sympathy for this young man who was not the shooter, who was not the actual killer. I don't know. I mean, it seems to me under the California state instructions that require intent, the fact that he was intoxicated would require an instruction. And I don't know if you – I don't know that – I don't know if it was reasonable to put in that much videotape or a rational tactic to put in that much videotape. It just – it doesn't make any sense to me to allow all those officer statements to come in. I mean, it just – Your Honor, I can respect the question. I presided over a lot of trials where, you know, I'm pretty sure the defendant is guilty. There's usually some defense that the trial lawyers come up with. Well, they also did put in the intoxication defense. They put on Tiffany Maia, a young gang member, to say that he was drunk and he didn't know what was going on, that he just stepped out of the car. But they didn't – he didn't ask for the instruction, right? They did not ask for the instruction, and that was how – Well, the difference does it make if they put in the evidence that he was drunk? If they don't ask for the instruction, that would tell the jury you can not convict if he was drunk because he doesn't have the requisite intent. Well, again, the requisite intent was the intent to assault Dobson. Right. Okay? And he admitted that he assaulted Dobson. Plus, you have an eyewitness who testified. Wait. He admitted it not on the stand. He admitted it in that videotape. He did not take the stand. Right. That's what I'm saying. And so in order to – That's my point. Right, Your Honor. But he also said in the videotape that he was drunk, that he just got out of the car and heard some shots and stumbled right back in the car as soon as he heard the shots. That was in the videotape, and that couldn't have come out unless he took the stand. But both came out. Both came out because of the tape. In the videotape. But they would not – but the second one would not have come out unless he had taken the stand. The inculpatory statement would come out without him taking the stand. The exculpatory statement would not. And he had a prior conviction for assault with a deadly weapon. No, I don't think it would. I don't think that the testimony – well, I guess as an admission it would come in. The admission would come in. The admission of inculpatory – inculpatory admission would come in. Okay. And that's the problem here, is the bare inculpatory admissions would always come in. They always come in. And you don't get any of the additional statements, the exculpatory statements that he was drunk, that he heard shots and stumbled right back into the car. You don't get them unless – But those were useless without requesting the instruction. Those were – it was useless to put in evidence. That's my point about this defense theory. It would be useless to put in the evidence that he was drunk and he got back out without also requesting the instruction. And the State court found that it was error to not request the instruction. But again, the State court found there was no prejudice. Then why is it reasonable for it to at the same time say that it was a reasonable trial tactic for the attorney to put in the tape because it was exculpatory and it looked like it was badgering? If he's not going to put in the instruction, it helps his client. Your Honor, I still have to go back to was there any better tactical choice in this case? Was there any other defense – anything else he could have done? Yes. He was intoxicated and that negated the requisite intent element of the crime evading and bedding. That was a better – that was a better defense. Now, the defense is he did not have the intent to assault Dobson. Right, right. Intent to assault Dobson. What do we have? We have Fawn saying he picked Dobson. We have the evidence in the record and it's been three minutes over your time. So thank you. I'm just saying, Your Honor, there was sufficient other evidence. I know what you're saying. We've read the briefs and all the other things. Thank you, Your Honor. Well, in light of the fact that the prosecutor, the State, took three minutes, yes, you can have 30 seconds. One thing. Defendants' inculpatory statements would be – exculpatory statements would be admissible under Evidence Code Section 356. When the prosecution puts on inculpatory statements, we can put on exculpatory statements if they're made within the same conversation. Without the defendant testifying? Correct. Under the rule of completeness, that's an idea. Second issue is when it comes down to the tactical decision, I am not arguing that the attorney made an unreasonable tactical decision in allowing the videotape in. What I am saying is the attorney did not have a tactical reason for not sanitizing the portions that were inadmissible. There were large portions that were inadmissible, and the court could have sanitized those portions out and still had five hours' worth of an interrogation. That's extremely coercive. He didn't ask to sanitize that. And that's what the People v. Sanders case in California says, that you have a right to sanitize the interrogation to exclude the inadmissible portions but still have the admissible portions. So it was not a rational tactical decision to not request to sanitize the interrogations or, and or, request an admonishment so that the jury knew they were not to consider that inadmissible portion and inflammatory portion for the truth of the matter. And the fact that the defense counsel agreed to have the videotape on or didn't object to the admission of the videotape doesn't answer the question. That is not the tactical decision that's problematic here. How much was the full five hours played? Yes. There were two separate interviews on two separate occasions, and it was played, it was heard, and it was read, and then it was brought into the jury room. And in terms of the defense, this was a legal defense, not a factual. What was brought into the jury room? Pardon me? What was brought into the jury room? The transcripts of the interrogation. Yes, but not the video itself, right? I don't believe so. I'm not sure. Thank you. All right. Tran v. Lamarck is submitted, and we'll take up United States.
judges: Hug, Wardlaw, Siler